UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL MURRAY,

    Petitioner,

v.

SUZAN L. HUBBARD, Warden,

    Respondent.

Case No.  11-2943 JST (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons stated herein, the petition for such relief is DENIED.

## BACKGROUND

In 2008, an Alameda County Superior Court jury convicted petitioner of first degree murder and attempted murder, consequent to which he received a sentence of life in state prison without the possibility of parole. He was denied relief on state judicial review. This federal habeas petition followed.

Evidence presented at trial demonstrated that in 2003 petitioner, while robbing a gas station, shot and killed cashier Paul Bajwa, and shot and severely wounded another employee, Sohan Singh. Singh, who did not regain consciousness for several months after

1   the shooting, identified petitioner as the perpetrator at the preliminary hearing and trial,
2   though he failed to identify petitioner's picture in a photo line-up while in the hospital.
3   Petitioner was identified by his wife, Undeener Foots, and her mother, Rommie Holmes, as
4   the person in the gas station video surveillance footage recorded on the night of the
5   robbery.  Foots, who had no prior knowledge of the robbery, recounted at trial that
6   petitioner, some time after the robbery, said, "I fucked up.  I fucked up big . . . Shit didn't
7   go like it was supposed to go."  In a later telephone conversation, he said, in Foots's words,
8   that "he robbed some shit, it all went bad and blew up."  (Ans., Ex. D-8 at 1-3).

As grounds for federal habeas relief, petitioner claims that (1) the trial court violated his due process and jury trial rights when it denied his motion to sever; (2) the trial court violated his right to confront witnesses when it denied his request for information about the identity of an informant against him; (3) his right to a fair trial and due process were violated by the restitution imposed; (4) defense counsel rendered ineffective assistance; (5) there was cumulative error; (6) appellate counsel rendered ineffective assistance; (7) the admission of surveillance photographic evidence violated his rights to due process and trial by jury; (8) the admission of other crimes evidence violated his right to due process; and (9) the admission of evidence about his tattoos denied him due process.

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

1   "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
2   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question
3   of law or if the state court decides a case differently than [the] Court has on a set of
4   materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13
5   (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the
6   writ if the state court identifies the correct governing legal principle from [the] Court's
7   decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at
8   413. "[A] federal habeas court may not issue the writ simply because that court concludes
9   in its independent judgment that the relevant state-court decision applied clearly
10  established federal law erroneously or incorrectly. Rather, that application must also be
11  unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application"
12  inquiry should ask whether the state court's application of clearly established federal law
13  was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I.  Motion to Sever

Petitioner claims without elaboration that the trial court's denial of his motion to sever unrelated charges violated his rights to a fair trial and a jury, and resulted in prejudice.[1] This claim was raised only to the state supreme court, which summarily denied it. If there is no reasoned state court decision on a petitioner's claims, the federal court must conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006).

The relevant facts are as follows. Petitioner first faced five criminal charges. The first three were based on the events at the gas station. The remaining two were based on a robbery of two people at a different location three weeks before the gas station robbery. Before trial, petitioner had pleaded no contest to the last two charges. The jury, then, was

---

[1] Petitioner's claim that appellate counsel was ineffective for raising this claim on direct appeal is addressed below.

3

1   asked to try only the first three charges.

2         A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not
3   concern itself with state law governing severance or joinder in state trials. *Grisby v.*
4   *Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). Nor is it concerned with the procedural right
5   to severance afforded in federal trials. *Id.* Its inquiry is limited to the petitioner's right to a
6   fair trial under the United States Constitution. To prevail, therefore, the petitioner must
7   demonstrate that the state court's denial of his severance motion resulted in prejudice great
8   enough to render his trial fundamentally unfair. *Id.* In addition, the impermissible joinder
9   must have had a substantial and injurious effect or influence in determining the jury's
10  verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000). Of particular
11  importance in assessing prejudice are the "cross-admissibility of evidence and the danger
12  of 'spillover' from one charge to another, especially where one charge or set of charges is
13  weaker than another." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citations
14  removed).

15        Habeas relief is not warranted here. First, petitioner's conclusory allegation does
16  not provide any details or supporting information. Accordingly, this claim is DENIED
17  because it does not meet the specificity requirements of *Mayle v. Felix*, 545 U.S. 644, 655
18  (2005). Second, there has been no showing of prejudice. The jury convicted petitioner of
19  the charges arising from the gas station robbery. Petitioner's no contest plea removed the
20  remaining charges from the jury's consideration prior to trial, therefore rendering moot his
21  severance claim. That the trial court denied his motion to sever prior to his pleading guilty
22  cannot have resulted in any perceivable harm — let alone caused a constitutional violation
23  — to petitioner's defense at trial on the remaining charges. In its independent review of
24  the record, the Court concludes that the state court's denial of the claim was not
25  objectively unreasonable. Accordingly, petitioner's claim is DENIED.

26
27
28

4

**II.     Identity of Anonymous Informant**

After the robbery, footage of the crime was played on television. An anonymous informant saw the footage, and gave police information that led to petitioner's arrest. (Ans., Ex. D-8 at 2.) Petitioner claims that the trial court violated his rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), when it denied his motion to disclose the identity of the informant. This claim was raised only to the state supreme court, which summarily denied it.

Under *Brady*, the prosecution must disclose material evidence "favorable to an accused," *id.* at 87, even if the accused has made no request for the evidence in question. *United States v. Agurs*, 427 U.S. 97, 110–11 (1976). In order to establish a *Brady* violation, petitioner must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence had been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Habeas relief is not warranted because petitioner has not demonstrated any element of a *Brady* claim. First, there has been no showing that the evidence had exculpatory or impeachment value. Second, there is no support that the prosecution suppressed or withheld evidence. In fact, the record shows that the prosecution disclosed the *existence* of the informant well before trial. The record also shows that defense counsel withdrew his motion for disclosure, thereby mooting the claim at issue here. Third, the strength of the evidence against petitioner precludes any habeas relief. Foots and Holmes identified petitioner from the video footage, Singh provided an identification, and petitioner made inculpatory statements. The anonymous informant's identification may have led police to petitioner, but that identification was not material evidence. Impeachment of such witness would have done nothing to undermine the identifications of Foot, Holmes, and Singh. Therefore, in its independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable. Accordingly, petitioner's claim is DENIED.

### III. Restitution Fine

Petitioner claims that the trial court violated his right to due process by imposing a restitution fine without considering his ability to pay. This claim was raised only to the state supreme court, which summarily denied it.[2]

Habeas relief is not warranted here because success on this claim would not result in a voiding of the verdict or a reduced sentence. Habeas corpus is the appropriate remedy for a state prisoner, who must be "in custody" at the time the petition is filed, 28 U.S.C. §§ 2241(c), 2254(a), who challenges "the fact or duration of his confinement and seeks immediate or speedier release." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994). A monetary fine is not a sufficiently significant restraint on liberty to satisfy the custody requirement. *See Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987). Nor does the fact that petitioner also challenges his custody suffice to confer jurisdiction on this Court to review his restitution claim by way of a federal habeas petition. *See United States v. Thiele*, 314 F.3d 399, 401–02 (9th Cir. 2002).

Furthermore, petitioner claims that the restitution fine was imposed in violation of state law. State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861–62 (2011). Additionally, the record shows that the trial court did consider petitioner's ability to pay when it made its decision regarding restitution. (Ans., Ex. B-15 at 1833.)

Because the claim is not remediable under federal habeas, petitioner cannot show that the alleged violation of his rights by the trial court entitles him to habeas relief. Therefore, in its independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable. Accordingly, petitioner's claim is DENIED.

---

[2] Petitioner's claim that counsel was ineffective for raising this claim on direct appeal is addressed below.

### IV. Assistance of Defense Counsel

Petitioner claims that defense counsel rendered ineffective assistance by failing to object to the restitution fine proceedings, especially on grounds that there was no determination of petitioner's ability to pay. As with the above claim, the record does not support petitioner's claim. Because the trial court did consider petitioner's ability to pay, defense counsel's alleged failure to object cannot have resulted in prejudice. Also, success on this claim would not result in habeas relief, viz., a voiding of the verdict or a reduction in the sentence. Accordingly, this claim is DENIED.

### V. Cumulative Error

Petitioner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). Because petitioner has not shown a single constitutional error, his cumulative error claim necessarily fails. Accordingly, this claim is DENIED.

### VI. Appellate Counsel

Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise the claims in the instant petition. This claim was raised only to the state supreme court, which summarily denied it.

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *See id.* at 1434 n.9 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

7

Habeas relief is not warranted here. The claims raised in the instant petition encompass the same ones for which petitioner sought review in state court. Because all the claims discussed in this order lack merit, appellate counsel cannot have rendered ineffective assistance by failing to raise them. As those claims are lacking, petitioner cannot show a reasonable possibility that but for appellate counsel's actions, the outcome of the proceeding would have been different. This claim is DENIED.

## VII. Identification Evidence

Petitioner claims that the trial court violated his right to due process when it admitted evidence that Holmes and Foots had identified him as the person in the gas station's surveillance footage. The state appellate court summarized the relevant facts as follows:

> When the case was assigned for trial, [petitioner] filed an "In Limine Motion to Suppress Witness Identification Testimony" by Undeener Foots and Rommie Holmes on the ground that "both Foots'[s] and Holmes'[s] identifications of the [petitioner] resulted from a leading and suggestive interrogation process and should be excluded . . . as unreliable."
>
> After hearing extensive argument, the trial court tentatively denied the motion, but it allowed the defense to revisit the issue — even if necessary with an evidentiary hearing pursuant to Evidence Code section 402 — should additional information arise . . .
>
> Ms. Holmes made an in-court identification of [petitioner] at the trial. She testified that she first identified [petitioner] when Sergeants Reilly and Medeiros showed her the special bulletin prepared by the Oakland Police Department, which had five pictures obviously taken from the store's video surveillance camera. When asked on direct examination "Did you have any hesitation in looking at that and saying 'That's Paul Murray,'" Ms. Holmes answered, "No." It is unclear from the record whether she was shown a enlarged copy of [petitioner]'s DMV license photo . . . before the special bulletin.
>
> Regarding Ms. Foots, Sergeant Medeiros testified that [petitioner]'s DMV photo was the first thing shown to her. He further testified that when she was shown the surveillance photos in the special bulletin, Ms. Foots responded that the person depicted "looked like" [petitioner]. However, she testified that she was "scared" and "very high" on cocaine when she spoke with Sergeant Medeiros. Sergeant Medeiros testified that Ms. Foots

8

> seemed nervous, but did not appear to be under the influence. She also identified [petitioner] at trial.
>
> [Petitioner] . . . contends that "the admission of evidence that Foots and Holmes identified appellant in the surveillance camera photographs was a violation of due process." [Footnote omitted.]

(Ans., Ex. D-8 at 4-6.)

The state appellate court denied petitioner's due process claim on grounds that "[a]n identification that does not directly tag a person as the perpetrator of a criminal act clearly has less weight, as an evidentiary matter, than one which does make that direct connection. Given the lesser evidentiary heft, identifications that are not directly inculpatory would necessarily have less consequence to a due process inquiry into the fundamental fairness of a trial":

> We do not believe it was a violation of due process for the trial court to deny [petitioner]'s motion and let the jury hear evidence regarding Holmes's and Foots's pretrial identifications of [petitioner]. Whether intimidation, intoxication, or suggestion produced the identifications could be explored in cross-examination by the defense, but would have to be balanced against the intimate knowledge of [petitioner] Ms. Foots had previously acquired, the lesser but still considerable acquaintance Ms. Holmes had of him, and the fact that both identified [petitioner] at trial. Moreover, the ultimate issue of [petitioner]'s culpability rested on the jury's opinion of whether the person depicted in the surveillance camera videotape from the Seminary Gas & Food Mart on August 23, 2003, was the same man sitting before them in court. We therefore cannot agree with [petitioner]'s assertion that "Foots and Holmes were the most important identification witnesses in the case — and by far the most likely to influence the jury's determination whether [petitioner] was the man in the surveillance videos." And the impact of Mr. Singh's identification of [petitioner] at trial cannot be dismissed as negligible, nor the fact that [petitioner] was already under arrest for the charged offenses when Ms. Holmes and Ms. Foots made their pretrial identifications, nor the fact of [petitioner]'s incriminatory statement to Foots that he "fucked up" in a robbery.

(*Id.* at 9) (footnotes omitted).

Petitioner's claim is without merit. The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784

9

1   F.2d 984, 990 (9th Cir. 1986). There has been no such showing here. The evidence was
2   unquestionably relevant, however possibly flawed the witnesses' recollection. They knew
3   petitioner well. Petitioner was free at trial to challenge the witnesses' credibility and the
4   accuracy of their identification. Also, habeas relief can be granted only if there are no
5   permissible inferences that the jury may draw from the evidence. *Jammal v. Van de Kamp*,
6   926 F.2d 918, 920 (9th Cir. 1991). The jury could make the permissible inference that
7   Holmes and Foots believed that it was petitioner in the photographs, an identification
8   supported from their long and close personal knowledge of him.

9   Further, there has been no showing of prejudice. Not only did Singh identify
10  petitioner as the perpetrator, petitioner made inculpatory statements. Finally, even if the
11  evidence was prejudicial, habeas relief would not be warranted. The Supreme Court "has
12  not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence
13  constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v.
14  Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of
15  irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit
16  precedent but not contrary to, or an unreasonable application of, clearly established Federal
17  law under § 2254(d)).

**VIII. Other Crimes Evidence**

19  The prosecution sought to admit evidence that petitioner had committed six prior
20  uncharged robberies. The trial court admitted only one, and instructed the jury to consider
21  this evidence on the issue of a common plan or scheme. On appeal, petitioner claimed that
22  this was impermissible evidence that he committed the gas station robbery. The state
23  appellate court rejected this claim because no objection on such grounds was made at trial.

24  Petitioner claims here that evidence of the prior robbery was impermissible
25  character or propensity evidence. This claim fails because no remediable constitutional
26  violation occurred. A federal habeas petitioner's due process right concerning the
27  admission of propensity evidence is not clearly established for purposes of review under
28  AEDPA, the Supreme Court having reserved this as an open question. *Alberni v.*

10

*McDaniel*, 458 F.3d 860, 866–67 (2006).

Petitioner's related contention that the prejudicial effect of the conviction evidence outweighed its probative value also fails. First, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101. Second, the admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry*, 197 F.3d at 1031. However, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal*, 926 F.2d at 920.

Here, petitioner has not shown that a specific constitutional guarantee was violated or that he was denied a fair trial. The jury could draw the permissible inference that petitioner harbored a similar scheme or plan in both instances. Furthermore, any prejudicial effect was ameliorated by the juror instructions to regard such evidence only as evidence of a common scheme or plan, not as possible proof of intent, not of bad character or proof of guilt of the current charges he faced. This Court must presume that the jury followed its instructions and used the evidence appropriately. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). This claim is DENIED.

## IX. Tattoo Evidence

The trial court admitted evidence that petitioner had a tattoo reading "Get rich, Die trying." On direct appeal, petitioner claimed that such evidence was more prejudicial than probative. The state appellate court disagreed. It concluded that the evidence was related to the issue of motive, and though "the message of the tattoos was susceptible to differing interpretations depending upon context or mental perspective," this went to the weight of the evidence, not its admissibility. (Ans., Ex. D-8 at 12.)

Here, petitioner claims that the evidence was prejudicial. The state court reasonably concluded that petitioner had made no such showing. First, the evidence of petitioner's guilt was strong. Foots and Holmes identified him from the video footage,

11

Singh identified him as the perpetrator, and he made inculpatory statements. Second, the jury could make the permissible inference that petitioner intensely desired riches, a desire strong enough that he wanted the motto permanently affixed to his skin. Because the jury could draw a permissible inference, habeas relief is precluded. *See Jammal*, 926 F.2d at 920. Third, it is not clearly established that the admission of irrelevant or prejudicial evidence justifies the issuance of the writ. *Holley*, 568 F.3d at 1101. Accordingly, this claim is DENIED.

## CONCLUSION

The state court's adjudication of petitioner's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

**Dated:** April 26, 2013

JON S. TIGAR
United States District Judge